## Hocking Valley Bank *versus* Barton.

1. Two notes for value of same date, at six and twelve months, were made payable at Meadville ; an Ohio bank discounted them before maturity for the payee ; as to the six months note he waived notice and demand, and on his promise to pay it at the *bank*, it agreed he might take the note at any time, and it was not sent to Meadville for collection until fifteen months after maturity ; the other was sent there before due and collected from the maker by suit. *Held*, that these facts were not evidence that the note was not discounted in the usual course, or that the bank agreed to release the maker and look to the payee, or let in proof of payment by the maker to the payee, or of equities between them.

2. The bank's title was as endorsee before maturity ; it did not claim on the payee's title and could not be affected by his subsequent declarations.

November 20th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Crawford county :* No. 187, to October and November Term 1870.

This was an action of assumpsit by the Hocking Valley Bank (Ohio) against L. L. Barton, brought to August Term 1859.

The cause of action was the following note :—

"$1000.    Lancaster, Ohio, August 25th 1857.

Six months after date I promise to pay William Latta or order for the use of the Ohio Stage Company one thousand dollars, for value received, with six per cent. interest from date, at the exchange office of J. R. Dick, Esq., Meadville, Penna.

L. L. BARTON."

Endorsed, " Demand and notice waived.    WILLIAM LATTA."

The cause was tried, June 22d 1870, before Johnson, P. J.

The plaintiff gave the note and endorsement in evidence and rested.

The defendant, under objection and exception, gave evidence that on the 18th of August 1857, he bought from Latta the stock of the Ohio Stage Company, with their mail contract, in payment of which Barton gave Latta the note in suit and another note of the same kind and for the same amount, payable at the same place in twelve months ; Barton to have possession of the stock on the 15th of August 1857, " and to answer all charges and risks."

The defendant then offered to prove by S. N. Pettis, Esq., the declarations of the cashier of the bank, that the bank did not hold

[Hocking Valley Bank *v.* Barton.]

the note in the usual course of business, but under an arrangement by which Latta had the right to take it at any time for the purpose of laying ground for evidence of payment to Latta.

The offer was admitted under objection by the plaintiff, and a bill of exceptions sealed.

Mr. Pettis testified that about October 15th 1859, he had a conversation with the cashier of the bank at the banking-house on the subject of the note; the cashier then said "that although the note had been in the bank, it was held by such an arrangement that Latta could have taken it at any time."

The defendant then read the cross-examination in the deposition of C. F. Garraty (who had been cashier of the bank), taken by the plaintiff. The defendant said that the bank had, on the 28th of September 1857, discounted the note at the instance of Latta; it had not been sent to Dick's banking-house, because Latta promised to pay it at the plaintiff's bank; and for the same reason suit was not brought on the note.

In a subsequent deposition Garraty testified, that the proceeds of the note, $974.50, were applied to the use of Latta; that the bank had owned the note from the time of its discount.

H. C. Weakley, a subsequent cashier, testified as Garraty had; and also that the note had been retained at the request of Latta, on his promise to pay it at the bank, without putting the plaintiff to the trouble and cost of collecting it. Latta was then solvent; he became insolvent in November 1858; the other note was forwarded for collection, because Latta had not requested that it should be retained.

J. M. Dick, at whose bank in Meadville the notes were payable, testified that the twelve months' note was received at his bank for collection before it was due, it being the custom to forward notes before maturity for demand and protest; the note in suit was sent to his bank fifteen months after it became due.

The defendant then offered to prove that he had paid the note to Latta as agreed between them; to show it in part by letters of Latta, alleging that he had taken up and owned the note and that he had in his hands funds of Barton to pay it.

The offer was objected to by the plaintiff, and—except the part of Latta's letter claiming to have taken up and own the note—admitted and a bill of exceptions sealed.

The defendant testified that at Latta's request he had paid $879.44 of debts of the company, for which he was to have credit on the note, which sum had never been allowed or paid him. " If the bank had notified me at the maturity of the note that they held and claimed it, I could have protected myself by preventing Latta from receiving my mail pay. Latta received the full amount of this note and $1100 over its face, and he is indebted to me in such amount."

[Hocking Valley Bank *v.* Barton.]

Defendant read parts of a letter from Latta to him, dated "——
29th 1858," in which Latta said he enclosed post-office order for
route No. 3393, "which you will collect and send me statement
as soon as possible. * * * I have done everything I can these
hard times to help you through with these matters; * * * let me
hear from you soon that the note is paid; * * * Have these
post-office orders collected and statement sent me soon, as I may
receive the back pay and make arrangement and have these notes
transferred soon as possible," &c.  Also letter same to same, dated
"July 8th 1858 :" "enclosed send you post-office order, collect
and make return as soon as possible. * * * Levi Jones is enti-
tled to be paid one-half of the pay on No. 3390. * * * Please
give this matter attention and settle with and pay him soon," &c.

Defendant under objection and exception gave in evidence cer-
tificate from post-office department of the account between Latta
and the defendant from April 1st 1857 to February 26th 1859,
crediting him with service in carrying mail from April 1st 1857
to December 31st 1858, on the routes sold to Barton, and charg-
ing him with $2259.66, the full amount due for the service.

The plaintiff in rebuttal gave evidence that the note had been
discounted at the request of Latta.

The court charged :—

* * * ["Have the bank ever got their pay or did they enter
into any arrangement with Latta by which they ever surrendered
the note to him or were to look to him alone for their payment and
release Barton ?  These are questions to be submitted to you. * *
The defendant alleges that they did so agree with Latta, and that
it either was not discounted in the regular course of business or
that the bank returned it to Latta and agreed to arrange it with
him, and not to look to Barton for payment.  In support of this
theory the defendants' counsel argues that it so appears :—

"1. Because the note was not sent to Meadville for payment at
maturity or for collection until nearly fifteen months afterwards,
and long after the other note due six months later, was sent, sued
and collected from Barton.

"2. Because the cashier said that the note was in the bank
under circumstances that entitled Latta to lift it at any time.

"3. From the testimony of the cashier that the note was re-
tained because Latta promised to pay it there and desired that it
should not be forwarded.

"We submit the facts to you.] * * * If the bank agreed to
look to Latta alone for it and release Barton, or if they charged
and surrendered it to him to settle with Barton, the arrangement
between Barton and Latta for its payment by the application of
funds in the hands of Latta for that purpose would be valid and
effectual for its payment, and the note as to the defendant would
be cancelled, and the bank cannot recover it now, provided you

[Hocking Valley Bank v. Barton.]

believe from the evidence of the defendant that as between him
and Latta it was paid. The mere detention of the note by the
plaintiff or not demanding it when due does not support the alle-
gation that the bank did not own it, as doubtless Latta did promise
to pay it and waived protest."

The verdict was for the defendant.

The plaintiff took a writ of error, and assigned for error the
admission of defendant's offers of evidence and the part of the
charge in brackets.

*J. B. Brawley* (with whom was *H. C. Johnson*), for plaintiff in
error.

*M. Park Davis*, for defendant in error.

The opinion of the court was delivered, January 9th 1872, by

WILLIAMS, J.—The uncontradicted evidence—that given by
the defendant as well as that given by the plaintiff—shows that the
note in suit was discounted by the bank for the payee before ma-
turity, at the usual rate; and it is not pretended that the defend-
ant has paid it to the bank, nor is there any evidence that it has
been paid by the payee. What boots it, then, that the defendant
has paid the amount of the note to the payee, or that the latter
has received moneys for the use of the defendant, which it was
agreed between them should be applied to the payment of the
note? Unless the bank authorized the payment, or has in some
way released the defendant, he is still liable to it for the note. It
is not alleged that the bank authorized the payment, but it is
insisted that it did not take the note in the usual course of busi-
ness, and, therefore, holds it subject to the equities existing between
the maker and payee. This is the defence set up on the trial, and
zealously contended for here. But what is the evidence to sustain
it? The bank, as we have seen, discounted the note for the payee
before maturity; and if so, took it discharged of all equities be-
tween the maker and payee, unless there was some special under-
standing or agreement which took the case out of the usual and
ordinary course of business. What, then, are the facts relied on
as tending to show that the bank took the note under some special
arrangement with the payee, and not in the usual course of busi-
ness? They are these: Payment of the note was not demanded
of the maker at maturity—demand and notice were received by
the payee; the note was not sent to the exchange office of Dick
for collection until about fifteen months after it was due; it was
retained by the bank in the meantime, at the request of the payee,
upon the understanding had with him that he would pay it there
without putting the bank to the trouble or cost of collecting it;
and after it had been sent to Dick for collection, and suit had

22 P. F. SMITH—8

[Hocking Valley Bank *v.* Barton.]

been brought on it, the cashier declared to Mr. Pettis that though it had been in the bank, it was held by such an arrangement that Latta, to whom it was originally given, could have taken it at any time. Now do any or all of these facts tend to show that the note was not taken in the usual course of business, or that it is held subject to the equities between the maker and payee? Do they show that it was not discounted by the bank for the payee before maturity, or that in discounting it the bank agreed to release the maker, and to look only to the payee for payment? It seems to us that they do not. It is not an unusual circumstance for the endorser to waive demand and notice. The bank was under no obligation to demand payment of the maker at maturity, and it did not release him by retaining the note, at the request of the payee, upon his promise to pay it there without putting the bank to the trouble or cost of collecting it. Nor has the defendant any reason to complain of the indulgence, for he might have discharged his liability by depositing the amount of the note in the exchange office where it was made payable.

Surely there is nothing in any or all of these facts sufficient to show that the bank is not the bonâ fide holder of the note, and entitled to recover the amount thereof from the defendant. And what do the declarations of the cashier amount to, admitting that they are admissible in evidence as against the bank? Do they tend to show that the bank did not discount the note before maturity? Or if it did, that the note was paid by the payee, or that the bank agreed to release the maker? Nothing of the kind. Taken strictly as proved, all that the declarations show is, that the bank held the note under such an arrangement with the payee that he could have taken it at any time. They have this extent—no more. And what was meant is apparent from the testimony of the two cashiers—whose depositions were read in evidence by the defendant—that the bank retained the note at the request of the payee, and upon his promise to pay it there, and that under this arrangement he could have taken it at any time. But he could not have taken it without complying with the arrangement, and there is nothing in the evidence to warrant the inference that he could.

Our conclusion upon the whole case then is, that there was no sufficient evidence tending to show that the bank did not discount the note at all; or, that having discounted it, the bank agreed to look to the payee alone for it, and release the maker; or that it charged and surrendered it to the payee to settle with the maker, and it was error to submit these questions to the jury. It follows that all the evidence given by the defendant, under exception, tending to show that he has a defence as against the payee, was improperly received, and should have been excluded. But if it were otherwise, the payee's letters were clearly inadmissible. The bank is not claiming to recover on the title of the payee, but on

[Hocking Valley Bank v. Bank.]

its own title as endorsee of the note before maturity, and cannot be affected by the subsequent ex parte declarations of the payee. As between the bank and the defendant, the payee's letters to the latter, amount to no more than would his unsworn verbal declarations, and come directly within the rule which excludes hearsay evidence. But as we have said, all the evidence given on the subject should have been excluded; yet having been admitted, the court should have instructed the jury, on the whole case, that there was no sufficient evidence that the bank took the note out of the usual course of business, or that it held it subject to the equities between the maker and payee, and that payment to the latter constituted no defence as against the bank.

Judgment reversed, and a *venire facias de novo* awarded.